902 F.2d 35
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jairo MARTINEZ, Defendant-Appellant.
 No. 89-6250.
 United States Court of Appeals, Sixth Circuit.
 May 8, 1990.
 
 Before KEITH and DAVID A. NELSON, Circuit Judges, and JAMES P. CHURCHILL, Senior District Judge.*
 PER CURIAM.
 
 
 1
 This is an appeal from a sentence of imprisonment imposed under the sentencing guidelines after the defendant pleaded guilty on two counts of a federal indictment for drug violations. The defendant argues that the district court erred (a) in increasing the offense level by two points for possession of a dangerous weapon, and (b) in adding two points in the criminal history calculation because the defendant committed the offense while under a criminal justice sentence. Because we find no error in the district court's findings, we shall affirm the sentence.
 
 
 2
 * Federal law enforcement officials conducted a search of defendant Jairo Martinez's apartment in Louisville, Kentucky, pursuant to a warrant, on February 8, 1989. In addition to Mr. Martinez, whom they arrested, they found two ounces of cocaine, a triple-beam scale, a .45 caliber Colt automatic pistol, ammunition, $1330 in cash, and drug-related documents and records. The pistol and ammunition, which Mr. Martinez admitted were his, were found in a dresser drawer in his bedroom. Mr. Martinez was charged with, among other things, possessing cocaine with intent to distribute it, in violation of 21 U.S.C. Sec. 841(a)(1) and 18 U.S.C. Sec. 2, and conspiring to possess cocaine with intent to distribute it, in violation of 21 U.S.C. Sec. 846.
 
 
 3
 This was not Mr. Martinez's first brush with the law. In December of 1987 a court in Harris County, Texas, found Mr. Martinez guilty of distributing cocaine and sentenced him to imprisonment for 12 years. Mr. Martinez was released on bond pending his appeal. The Texas Court of Appeals affirmed the conviction in November of 1988. Mr. Martinez failed to show up at a court appearance scheduled for January 13, 1989, and a bench warrant was issued for his arrest. The Harris County Sheriff's Office filed a detainer against him after Mr. Martinez's arrest in Kentucky the following month.
 
 
 4
 Pursuant to a plea bargain, Mr. Martinez pleaded guilty to the possession and conspiracy counts of the federal indictment. The United States promised to recommend a sentence at the low end of whatever the guideline range proved to be. In its presentence report, the probation department recommended that the court fix the offense level at 22: 18 for the base level, plus 4 for a leadership role in the offense, plus 2 for possessing a firearm during the offense, minus 2 for acceptance of responsibility. The department also recommended three criminal history points for the Texas conviction, but did not recommend additional points for having committed the federal offense while under a criminal justice sentence. The recommendation would have placed Mr. Martinez in Criminal History Category II, producing a sentence range of 46 to 57 months.
 
 
 5
 Both sides filed objections to the probation officer's recommendation. The defendant objected to the two-point increase for possession of the handgun, and the government took exception to the failure to add two criminal history points for commission of the offense while under a criminal justice sentence. The district court rejected the former objection, but accepted the latter. Mr. Martinez was placed in Criminal History Category III, where the guidelines indicated a sentence range of 51 to 63 months. Going to the low end of that range, as recommended by the government under the plea agreement, the court sentenced Mr. Martinez to imprisonment for 51 months, plus six years of supervised release and a $100 special felony assessment.
 
 II
 
 6
 U.S.S.G. Sec. 2D1.1(b)(1), which provides for a two-point increase in the offense level for possession of a dangerous weapon during the offense, is accompanied by a commentary stating that the guideline "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet." Defendant Martinez argues that because the handgun was found in a drawer, it is clearly improbable that he possessed it in connection with the offense. He claims that for the enhancement to apply, the evidence must show he possessed the firearm intentionally to further the offense or recklessly or negligently in relation to the offense.
 
 
 7
 The defendant cites U.S.S.G. Sec. 1B1.3[1] in this connection, but the commentary to that guideline says that "[i]f the offense guideline includes creating a risk or danger of harm as a specific offense characteristic, whether that risk or danger of harm was created is to be considered in determining the offense level." U.S.S.G. Sec. 1B1.3, comment. (n.4) (emphasis supplied). Under Sec. 2D1.1(b)(1), the "specific offense characteristic" is possession of a firearm during the offense. Actual harm or risk thereof is not an element, and neither is state of mind; possession of the weapon in connection with the offense is all that matters. Section 1B1.3 has no application here.
 
 
 8
 The defendant cites United States v. Vasquez, 874 F.2d 250 (5th Cir.1989), for the proposition that mere possession is insufficient. In Vasquez, however, the weapon was found during a search of the defendant's home hours after he was arrested in connection with a purchase of cocaine from undercover officers. The arrest was made miles from where the weapon was found. In the present case, by contrast, the defendant was arrested in the same apartment where the cocaine and the gun were found, and the discovery of the contraband was contemporaneous with the arrest.
 
 
 9
 The facts of this case resemble those in United States v. Green, 889 F.2d 187 (8th Cir.1989). There the defendant pleaded guilty to distributing cocaine after officers found the drug in her apartment. An unloaded .22 caliber pistol was found in another room, lying in plain view inside the headboard of the defendant's bed. A box of .22 caliber ammunition was found inside a nearby drawer. In upholding the district court's application of Sec. 2D1.1(b)(1), the Court of Appeals for the Eighth Circuit stated:
 
 
 10
 "Green's circumstances are somewhat similar to those described in the hypothetical of the commentary to the Guidelines. The gun was unloaded and Green kept it at her home. Unlike the rifle in the hypothetical, however, guns like Green's are used only for personal protection. The commentary hypothetical speaks only of arresting a defendant at his apartment, with the implication that the drug offense has taken place elsewhere. Green, in contrast, was undisputedly operating her drug distribution operation from her apartment. The gun was readily accessible to Green, as was her ammunition supply, for use during a drug transaction. In sum, Green's undenied possession of a firearm and ammunition in the same place where she conducted drug transactions and the additional hazard the presence of the firearm created in her drug operation satisfy us that connection of the gun to the offense is not clearly improbable." 889 F.2d at 189.
 
 
 11
 See also United States v. McGhee, 882 F.2d 1095 (6th Cir.1989) (sustaining application of Sec. 2D1.1(b) to defendant where drugs and weapons were found concealed in different places in defendant's house).
 
 
 12
 We agree with the Green court's analysis. Under that analysis, it is not clearly improbable that Mr. Martinez possessed the firearm in connection with his drug offense. The district court's factual finding on this point was not clearly erroneous. In reviewing the district court's application of the guidelines we must, of course, accept the district court's findings of fact unless they are clearly erroneous, and we must give "due deference" to the district court's application of the guidelines to the facts. 18 U.S.C. Sec. 3742(e).
 
 
 13
 The defendant argues next that the district court erred in assessing a two-point increase because of the offense having been committed while the defendant was under a criminal justice sentence. Although U.S.S.G. Sec. 4A1.1(d) plainly says that two points are to be added in the criminal history calculation if the defendant "committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status," Mr. Martinez contends that Sec. 4A1.1(d) does not apply because his Texas conviction was on appeal at the time he committed the instant offenses. He claims that the district court ought to have left him in Criminal History Category II and considered an upward departure on the basis of U.S.S.G. Sec. 4A1.3(d). (That guideline provides that when the criminal history category does not adequately reflect the seriousness of defendant's past criminal conduct, the court may consider departing upward based on whether a trial, sentencing, or appeal was pending on another charge at the time of the instant offense. If the court had so departed, the defendant suggests, the sentence could be reviewed under the stricter standard of reasonableness.)
 
 
 14
 Whatever merit this argument might otherwise have, the defendant overlooks the basic fact that his Texas conviction was not on appeal when he committed the present offenses. The Texas Court of Appeals affirmed the Harris County conviction on November 15, 1988. The conspiracy offense extended from December of 1988 to February 8, 1989. The possession offense occurred on February 8, 1989. The fact that the defendant did not surrender himself on January 13, 1989, when he was supposed to, hardly suggests that his sentence was somehow still under appeal the following month. We are not prepared to say that a defendant can have his criminal history category downgraded by the expedient of jumping bond and refusing to submit to a proper exercise of judicial authority.
 
 
 15
 The sentence is AFFIRMED.
 
 
 
 *
 The Honorable James P. Churchill, Senior United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 "... [S]pecific offense characteristics ... shall be determined on the basis of the following: ... (3) all harm or risk of harm that resulted from the acts or omissions specified ... if the harm was caused intentionally, recklessly or by criminal negligence ...; (4) the defendant's state of mind, intent, motive and purpose in committing the offense...." U.S.S.G. Sec. 1B1.3(a)